UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK WILLIAM LEAR<br><br>Plaintiff,<br><br>v.<br><br>MARTIN BITER, et al.,<br><br>Defendant. | CASE NO. 1:15-cv-01903-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS NON-COGNIZABEL CLAIMS**<br><br>(ECF NO. 31)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) He has consented to Magistrate Judge jurisdiction. (ECF No. 8.) Defendants declined to consent to Magistrate judge jurisdiction. (ECF No. 42)

On December 21, 2016, the Court screened Plaintiff's second amended complaint (ECF No. 31) and found it states cognizable Eighth Amendment claims against Defendants Akanno and Palomino. (ECF No. 33.) The remaining claims and defendants were dismissed with prejudice for failure to state a claim.

**I.    Williams v. King**

Federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence[.]" Mt.

Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted). On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil claim. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court held that a Magistrate Judge does not have jurisdiction to dismiss a claim with prejudice during screening even if the plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, Defendants were not yet served at the time that the Court screened the first amended complaint and therefore had not appeared or consented to Magistrate Judge jurisdiction. Because Defendants had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in his previous screening order, he will below recommend to the District Judge that the non-cognizable claims be dismissed.

## II. Findings and Recommendations on Second Amended Complaint

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Pleading Standard

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### C. Plaintiff's Allegations

Plaintiff is incarcerated at High Desert State Prison. He complains of acts that occurred at Kern Valley State Prison ("KVSP") and California State Prison, Corcoran ("CSP-COR"). He names the following defendants in their individual and official capacities: (1) Martin Biter, Warden at KVSP; (2) J. Lewis, Deputy Director of Policy and Risk Management Services at California Correctional Health Care Services; (3) R. Michael Hutchinson, CEO of Health Care Services at KVSP; (4) Nurse Jane Doe at KVSP; (5) Dr. Johnathan Akanno at KVSP; (6) Jennifer Palomino, R.N. at KVSP; (7) R. Lozovoy, N.P. at KVSP; (8) Dr. C.K. Chen at KVSP; (9) A. Manasrah, R.N. at KVSP; (10) Dr. O. Ogun at KVSP; and (11) Mays, N.P. at CSP-COR.

Plaintiff's claims concern Defendants' alleged failure to treat pain affecting his back and leg. The Court summarizes Plaintiff's allegations defendant by defendant and in chronological order as follows:

Plaintiff arrived at KVSP on February 10, 2014. Plaintiff had lower back pain for approximately six months prior to his arrival. He had been taking pain medication for a shoulder injury and that helped him cope with his lower back pain.

### *Defendant Akanno*

Plaintiff saw Defendant Akanno shortly after his arrival at KVSP for high blood pressure on February 13, 2014. Although Plaintiff's pain medication was not discussed, the medication was discontinued the following day. As a result, his lower back pain worsened, and the pain was "shooting down [his] leg." Plaintiff later learned that Defendant Ogun had canceled his medication and that Defendant Akanno had falsely noted Plaintiff told him his shoulder pain had subsided.

Plaintiff believed he had "torn a ligament, muscle, or nerve," and that he required an MRI or ultrasound to diagnose the source of his pain. Plaintiff reported his pain to Defendant Palomino in March 2014. Palomino referred Plaintiff to Defendant Akanno without examination. Akanno refused to examine Plaintiff or order an MRI or ultrasound. Instead, Akanno ordered an X-ray of Plaintiff's right hip. Plaintiff disagreed that an X-ray would detect his problem and insisted that an MRI or ultrasound was required, explaining to Akanno "in great detail" the extent and nature of his pain. Akanno informed Plaintiff that his condition was not serious and falsely recorded that he had examined Plaintiff.

Plaintiff filed a 602 against Akanno regarding his request for an MRI or ultrasound and for failing to examine Plaintiff's back, leg, and foot. On April 23, 2014, Akanno called Plaintiff regarding his 602. Plaintiff informed Akanno that Akanno himself could not review a 602 complaining of Akanno's own conduct. Akanno stated that someone else would hear the 602. However, Akanno later falsely claimed that he had interviewed Plaintiff regarding the 602, thereby addressing it. He refused to order an MRI or address

Plaintiff's complaints. He ordered routine physical therapy but later told Plaintiff that physical therapy was "on hold."[1]

### *Defendant Jane Doe*

On April 18, 2014, Plaintiff's back "gave completely out," hampering his ability to stand and leaving him in "great pain." To address this pain, Plaintiff contacted medical on April 19 and informed Defendant Nurse Jane Doe of the incident. Defendant Doe responded that she would contact medical, but no one from medical came to Plaintiff's aid. Defendant Doe's failure to contact medical exacerbated Plaintiff's pain and further deteriorated his condition.

### *Defendant Palomino*

On April 21, 2014, Plaintiff saw Defendant Palomino. Plaintiff had been experiencing difficulty walking and standing as the pain in his right foot continued to worsen. He informed Palomino of his condition and ongoing pain. Palomino informed Plaintiff that his X-rays were negative and that, because he was scheduled to see Defendant Akanno in two days, she could not do anything for him. Palomino made this determination without examining Plaintiff. When Plaintiff told Palomino he had difficulty walking, Palomino stated that Plaintiff did not have cause to walk very far because he was on lockdown.

Upon attempting to leave, Plaintiff fell to the floor. He informed Palomino that his leg gave out regularly and that he believed he had nerve damage. Palomino stated that Plaintiff's X-rays were normal, that he could not make her do anything, and that if he did not get up she would call a sergeant. A sergeant was indeed called. Plaintiff explained the situation to the sergeant. Palomino informed the sergeant that there was no doctor present and that she could not do anything for him but would order a wheelchair for him to return to his cell. Plaintiff was wheeled back to his cell.

---

[1] Plaintiff was not given physical therapy until ninety days after it was ordered. The physical therapy only addressed some of Plaintiff's complaints.

5

On July 14, 2014, Defendant Palomino confronted Plaintiff and claimed to have observed Plaintiff squatting and laughing without difficulty, actions she stated were inconsistent with his complaints. Plaintiff insisted that his complaints were real. Palomino noted that Plaintiff was to apply ice or heat to the affected area, but did not inform Plaintiff of this recommendation or make ice or heat available to him.

Plaintiff later conducted a review of his own file and learned that both Palomino and Akanno made false notations in Plaintiff's medical file indicating that they had examined him when in fact they had not. They also made false notations with respect to Plaintiff's condition despite failing to examine him or address his complaints. In one instance, Defendant Akanno "intentionally misrepresented" Plaintiff's condition, noting that Plaintiff "animates with a normal gait and briskly, too." These notations prevented Plaintiff from being properly examined, leading to further deterioration of his condition.

### *Defendant Chen*

On August 22, 2014, Plaintiff saw Defendant Chen in relation to Plaintiff's complaints of false notations in his file. Chen told Plaintiff that he could not appeal inaccurate statements and that he should instead address his concerns to Akanno. Chen falsely noted that he interviewed and examined Plaintiff. Chen then abruptly turned to the officers who had brought Plaintiff to Chen and stated, "We're done here."

Plaintiff was thereafter referred to non-party Dr. Smith, "a specialist," by Dr. Ogun. Plaintiff saw Smith on September 10, 2014, who stated he believed Plaintiff had a herniated disc. Smith requested an MRI of Plaintiff's "lumbar spine."

### *Defendant Lozovoy*

Plaintiff continued to experience pain and difficulty walking. He saw Defendant Lozovoy on September 22, 2014. Lozovoy told Plaintiff that he did not care about Plaintiff's pain. Lozovoy also stated that Plaintiff should not have been referred to Dr. Smith or for an MRI because there was nothing wrong with him. Lozovoy stated that he was canceling all treatment having to do with Plaintiff's back, hip, and leg, including the MRI. Lozovoy made false notations regarding his examination of Plaintiff. Plaintiff

filed a 602 regarding this incident and later learned that Lozovoy did not have authority to cancel (and could not cancel) his treatment. This incident caused Plaintiff great distress. Lozovoy heard the appeal and made false notations regarding his examination of Plaintiff.

Plaintiff underwent an MRI on November 6, 2014. On November 17, 2014, Lozovoy called Plaintiff to medical but Plaintiff did not go because he did not have his results and, in any event, wished to avoid Lozovoy.

On December 15, 2014, Plaintiff saw Lozovoy. Lozovoy told Plaintiff that the MRI showed nothing was wrong with Plaintiff. However, Plaintiff knew the MRI showed a herniated disc at L4-L5, "severe stenosis," and "tendinosis gluteus medius." When Plaintiff informed Lozovoy of his herniated disc, Lozovoy responded, "That's nothing, we all have herniated discs." Lozovoy intentionally misread Plaintiff's MRI results. He also prevented Plaintiff from seeing a specialist by not "processing MRI results" and failing to refer Plaintiff to any specialist. Lozovoy made a "clear effort to prevent [Plaintiff's] treatment."

Plaintiff filed a grievance against Lozovoy. Defendant Chen met with Plaintiff to address his grievance and referred Plaintiff to a specialist. Chen refused to address Plaintiff's herniated disc.

Plaintiff's foot's condition continued to deteriorate "with each passing day," and the delay in treatment "proved crucial and caused Plaintiff irreversible damage." Lozovoy refused to acknowledge that something was wrong with Plaintiff. Lozovoy thus intentionally caused Plaintiff pain and suffering.

Plaintiff was transferred to CSP-COR on January 23, 2015.

***Defendant Mays***

On January 30, 2015, Dr. Smith recommended that Plaintiff undergo a laminotomy and see a surgeon. On April 1, 2015, Plaintiff saw Defendant Mays due to pain, recent falls, and his foot's "rapid deterioration." Plaintiff informed Mays of his foot's condition and his "medical need to walk." However, Mays refused to examine Plaintiff. She told Plaintiff

7

1 that he was scheduled to see a surgeon and she would not do anything until he had been
2 seen. Mays falsely noted that Plaintiff had no difficulty walking.

Plaintiff then underwent immediate surgery. Plaintiff resorted to this surgery only because his foot had gone "completely lame" and because the surgeon felt his whole leg may become paralyzed if he failed to have an operation. However, Plaintiff received a "bad surgery" and inadequate post-surgical care. Plaintiff was discharged early, and because of his inadequate post-surgical care, Plaintiff did not heal. He still struggles to walk, now using a cane and back brace to help him. If Defendants had provided Plaintiff adequate care earlier, Plaintiff could have avoided this surgery.

### *Defendant Hutchinson*

Plaintiff's allegations against Defendant Hutchinson are somewhat difficult to follow. He does not explain Hutchinson's involvement in his care, other than to state that Hutchinson reviewed Plaintiff's appeals and was aware of Plaintiff's allegations that staff had falsified records, heard their own appeals, and refused to provide Plaintiff treatment. Hutchinson refused to intervene.

### *Defendant Biter*

Similarly, Plaintiff alleges Defendant Biter ignored Plaintiff's circumstances and refused to intervene, even though he is "responsible for all inmates at KVSP." Plaintiff wrote Warden Biter three times regarding his encounters with Akanno and Palomino, but Biter did not help him.

### *Defendant Ogun*

Plaintiff alleges that Defendant Ogun canceled his medication shortly after Plaintiff's arrival at KVSP, leading to further pain in his back and leg. Plaintiff believes Ogun was deliberately indifferent to his medical needs.

### *Defendant Lewis*

Defendant Lewis also reviewed Plaintiff's appeals and was aware of Plaintiff's concerns but did not intervene.

### *Defendant Manasrah*

Plaintiff saw Defendant Manasrah in relation to a 602 against Defendant Akanno. Manasrah intentionally misrepresented and misdiagnosed Plaintiff's condition.

Plaintiff brings Eighth and Fourteenth Amendment claims against Defendants. He seeks declaratory and injunctive relief along with money damages.

**D.  Discussion**

   **i.  Medical Indifference**

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits deliberate indifference to the serious medical needs of prisoners. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A claim of medical indifference requires: (1) A serious medical need; and (2) A deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met by showing: (a) A purposeful act or failure to respond to a prisoner's pain or possible medical need; and (b) Harm caused by the indifference. Id. Where a prisoner alleges deliberate indifference based on a delay in medical treatment, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson, 290 F.3d at 1188). Mere indifference, negligence, or medical malpractice is not sufficient to support the claim. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 87, 105-06 (1976)). A prisoner can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment for reasons

unrelated to the prisoner's medical needs. See Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992); Estelle, 429 U.S. at 105.

Finally, a prisoner does not have a constitutional right to the medication of his choice, and a mere difference of opinion regarding appropriate treatment and pain medication is insufficient to give rise to a constitutional claim. Toguchi, 391 F.3d at 1058; Wilson v. Borg, No. 95-15720, 1995 WL 571481, at *2 (9th Cir. Sept. 27, 1995); Smith v. Norrish, No. 94-16906, 1995 WL 267126, at *1 (9th Cir. May 5, 1995); McMican v. Lewis, No. 94-16676, 1995 WL 247177, at *2 (9th Cir. Apr. 27, 1995).

### 1. Defendants Akanno and Palomino

Plaintiff alleges that Defendants Akanno and Palomino were aware of Plaintiff's increasingly serious back and leg pain and numbness, but nevertheless minimized Plaintiff's concerns, declined to offer treatment, interfered with Plaintiff's ability to get treatment, and falsified medical records to prevent Plaintiff from obtaining treatment. As a result, Plaintiff's surgery was delayed until his condition became an emergency, resulting in unnecessary pain and a poor result. As the Court found in its first screening order (ECF No. 27), these allegations are sufficient to state an Eighth Amendment claim against Defendants Akanno and Palomino.

### 2. All Other Defendants

The Court concludes that the following allegations against the following Defendants do not state a claim:

- **Jane Doe**: Plaintiff alleges that Nurse Doe did not summon immediate medical attention on April 19, 2014. Although no one from medical came to Plaintiff following Plaintiff's meeting with Nurse Doe, Plaintiff has not alleged facts to suggest that this was the result of anything more than error or negligence. Such allegations are insufficient to rise to the level of deliberate indifference. Additionally, Plaintiff saw Defendant Palomino two days after seeing Defendant Doe. He does not allege any harm resulting from this two-day delay in treatment. Accordingly, this allegation fails to state a claim.

10

- **Ogun**: Plaintiff alleges that Defendant Ogun canceled Plaintiff's medication for his shoulder pain. This allegation was not contained in Plaintiff's FAC. In any event, Plaintiff fails to state a claim. Plaintiff does not allege sufficient facts to show that Defendant Ogun was deliberately indifferent to Plaintiff's serious medical need. Plaintiff's pain medication was for a shoulder injury, which he references only briefly in his SAC, not his back or leg.[2] Accordingly, Plaintiff's allegations against Defendant Ogun fail to state a claim.

- **Lozovoy**:

   **(1)** Plaintiff alleges that, on September 22, 2014, Defendant Lozovoy threatened to cancel Plaintiff's treatment. However, according to Plaintiff, Defendant Lozovoy had no authority to cancel his treatment and, in fact, did not cancel his treatment. Mere verbal harassment and threats do not rise to the level of a constitutional violation and therefore do not state a claim for relief under § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

   **(2)** Plaintiff alleges that Lozovoy's September 22, 2014 examination was deficient and his notes contained false information. However, by that time, Plaintiff had already been referred for an MRI. It does not appear that this encounter with Lozovoy had any effect on Plaintiff's course of medical treatment or caused any harm. Accordingly, this allegation fails to state a claim.

   **(3)** Plaintiff alleges that Lozovoy's December 15, 2014 examination was also deficient, that his notes contained false information, and that he minimized Plaintiff's injury. Again, however, it does not appear that this interaction affected the course of Plaintiff's treatment as he was thereafter called to medical and referred to a specialist.

---

[2] The Court previously dismissed Plaintiff's shoulder injury allegations for failure to state a claim. (ECF No. 27.)

11

- **Chen**: Plaintiff complains that Dr. Chen falsely noted he had interviewed and examined Plaintiff on August 22, 2014. Sometime between December 15, 2014 and January 23, 2015, Chen also refused to address Plaintiff's complaints. However, it appears that Plaintiff was referred to a specialist in August 2014 and that Chen himself referred Plaintiff to a specialist sometime in late 2014 or early 2015. Plaintiff therefore has not alleged that Dr. Chen delayed or denied him medical treatment. Accordingly, Plaintiff's allegations against Chen fail to state a claim.
- **Mays**: Plaintiff complains that, on April 1, 2015, Defendant Mays refused to address Plaintiff's complaints, citing Plaintiff's upcoming surgical consult. Plaintiff suggests that Mays should have offered treatment to avoid surgery. However, Plaintiff does not have the right to the treatment of his choice. There are no facts to suggest that Mays' decision to defer treatment pending a surgical consultation was medically inappropriate or unacceptable.

In sum, Plaintiff has alleged sufficient facts to state cognizable Eighth Amendment medical indifference claims against Defendants Akanno and Palomino. He does not state cognizable Eighth Amendment claims against any of the other Defendants. These claims should be dismissed.

### ii. Due Process

Plaintiff presents several allegations relating to the administrative grievance process. He alleges that Akanno interviewed Plaintiff in relation to an appeal, even though he was prohibited from reviewing an appeal regarding his own conduct. He alleges that Manasrah participated in an appeal and "intentionally misrepresented" Plaintiff's pain. He alleges that Chen refused to address Plaintiff's concerns regarding false notations in his file, preventing him from addressing inaccuracies in his medical records. None of these allegations state a constitutional claim. Instead, they appear to allege violations of the California Code of Regulations or internal institutional policies regarding the processing of appeals. The Court finds no authority to support the

12

existence of a private right of action under either authority. See Gonzaga University v. Doe, 536 U.S. 273, 283-86 (2002) (basing a claim on an implied private right of action requires a showing that the statute both contains explicit rights-creating terms and manifests an intent to create a private remedy); Davis v. Powell, 901 F.Supp.2d 1196, 1211 (S.D. Cal. 2012) (no implied private right of action for violation of Title 15 prison regulations).

To the extent Plaintiff wishes to base a due process claim on deficiencies in the appeals process, his allegations fail to state a claim. The Due Process Clause protects plaintiffs against the deprivation of liberty without the procedural protections to which they are entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, a plaintiff has no stand-alone due process rights related to the administrative grievance process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Failing to properly process a grievance does not constitute a due process violation. See, e.g., Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (holding that plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Williams v. Cate, No. 1:09-cv-00468-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

The denial of a prisoner's administrative appeal generally does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006). Thus, there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983.

Those circumstances are not presented here. Plaintiff alleges that Defendants Manasrah, Chen, Hutchinson, and Lewis reviewed his appeals but did not take action regarding Plaintiff's allegations. Plaintiff must show that these Defendants knew that

13

constitutional violations were being committed by their subordinates. Plaintiff has not done so here. His bare allegation that they were aware of his concerns is insufficient to reach this threshold. These claims should be dismissed.

### iii. Declaratory Relief

Plaintiff seeks a declaration stating that his rights were violated. However, because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005). Therefore, Plaintiff's claim for declaratory relief should be dismissed.

### iv. Injunctive Relief

Plaintiff seeks injunctive relief requiring that Defendants Biter, Lewis, and Hutchinson "implement safeguards" to ensure all claims are "impartially investigated."

In any civil action involving prison or jail conditions seeking prospective relief, the Court will grant only the relief necessary to correct the violations of the rights particular to the case. 18 U.S.C § 3626(a)(1)(A). "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Id. Plaintiff's desired prospective relief extends beyond the scope of this litigation. Furthermore, Plaintiff states cognizable claims only against Defendants Akanno and Palomino, yet seeks injunctive relief against Defendants Biter, Lewis, and Hutchinson. However, he states no cognizable claims against the latter three Defendants. Accordingly, Plaintiff's claim for injunctive relief should be dismissed.

### v. Official Capacity Claims

Plaintiff names Defendants in both their official and individual capacities.

Plaintiff's official capacity claims for damages against Defendants are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169-70 (1985) (noting that Eleventh Amendment immunity from damages in federal court action against state

14

remains in effect when state officials are sued for damages in their official capacity). Accordingly, Plaintiff's damages request against Defendants in their official capacity should be dismissed.

Although Eleventh Amendment immunity precludes an award of damages against Defendants in their official capacities, it "does not bar actions for declaratory or injunctive relief brought against state officials in their official capacity." Austin v. State Indus. Ins. Sys., 939 F.2d 676, 680 (9th Cir. 1991). Here, Plaintiff seeks declaratory and injunctive relief. However, both his declaratory and injunctive relief claims should be dismissed for the reasons set forth above.

Lastly, official capacity claims must allege that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985). Plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); Oviatt v. Pearce, 954 F.2d 1470, 1473-74 (9th Cir. 1992). Here, Plaintiff identifies no policy or custom associated with the alleged violations.

Plaintiff's official capacity claims should be dismissed.

**III. Conclusion**

In sum, Plaintiff's second amended complaint states a cognizable Eighth Amendment claim for inadequate medical care against Defendants Akanno and Palomino but no other cognizable claims. Accordingly, IT IS HEREBY RECOMMENDED that this action continue to proceed only on Plaintiff's Eighth Amendment claims against Defendants Akanno and Palomino and that all other claims and defendants be DISMISSED with prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and

recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: December 4, 2017 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE