# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK WILLIAM LEAR,<br><br>Plaintiff,<br><br>v.<br><br>JOHNATHAN AKANNO and JENNIFER PALOMINO,<br><br>Defendants. | Case No. 1:15-cv-01903-DAD-JDP<br><br>FINDINGS AND RECOMMENDATIONS:<br>(1) TO DENY PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER;<br>(2) TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION;<br>(3) TO DENY PLAINTIFF'S MOTION FOR IMMEDIATE RESOLUTION OF ALL CLAIMS AND OTHER RELIEF; AND<br>(4) TO DENY PLAINTIFF'S MOTION FOR *ALBINO* HEARING AND OTHER RELIEF.<br><br>(Doc. Nos. 64, 51, 69, 74.)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS<br><br>ORDER SETTING NEW DEADLINE FOR DISPOSITIVE MOTIONS |

Plaintiff Roderick William Lear, a state prisoner, proceeds without counsel in this civil rights action brought under 42 U.S.C. § 1983. Four motions are pending before the court: (1) plaintiff's motion for a temporary restraining order; (2) defendants' motion for summary judgment on failure to exhaust administrative remedies; (3) plaintiff's motion for immediate resolution of all claims and other miscellaneous relief; and (4) plaintiff's motion for an *Albino* hearing and other miscellaneous relief. (Doc. Nos. 64, 51, 69, 74.) The undersigned recommends that the court deny all four motions for the reasons below.

1

## I. Plaintiff's motion for temporary restraining order

Plaintiff seeks a temporary restraining order prohibiting the California Department of Corrections and Rehabilitation ("CDCR") from confiscating his legal materials. (Doc. No. 64, at 1-2.) Here is the entirety of plaintiff's argument in support of his motion:

> [P]laintiff requests that the court issue an injunction order CDCR not to confiscate plaintiff's legal materials except for security purposes. As stated plaintiff is again without his property and can only do limited research and as shown by Deputy Attorney General Amie C. Mctavish defendants argument against plaintiff rely solely on which mistakes and failure they can point to.

(*Id*. at 2.)[1]

The court cannot grant the requested relief. The court lacks the authority to issue an injunctive order when a plaintiff seeks relief unrelated to his claims. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015); *see also Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (noting that courts issue injunctive orders to maintain status quo, not "to enjoin all possible breaches of the law"). Injunctive relief "requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology*, 810 F.3d at 636. The relationship between the two must be "sufficiently strong" such that the injunctive relief "would grant 'relief of the same character as that which may be granted finally.'" *Id*. (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). As the court previously explained (Doc. No. 53, at 3), plaintiff's inability to access to his legal materials is not the subject of his claims: his claims arise from the conduct of medical professionals at Kern Valley State Prison ("KVSP"), not his inability to access legal materials. (*See* Doc. No. 47, at 3-5, 10, 15.) The court should therefore deny plaintiff's motion. *See Padilla v. Nevada*, No. 08-cv-410, 2011 WL 2746653, at *8 (D. Nev. June 3, 2011) (denying plaintiff's request for preliminary injunction giving him access to legal materials), cited in *Pac. Radiation Oncology*,

---

[1] Plaintiff included other requests in his motion; the court has addressed those separately. (*See* Doc. No. 68, at 2-3.)

810 F.3d at 636; *Rodrigues v. Ryan*, No. 16-cv-8272, 2017 WL 5068468, at *1-4 (D. Ariz. Nov. 3, 2017), *aff'd*, 718 F. App'x 577 (9th Cir. 2018).

Even though the court should deny plaintiff's motion, the undersigned is concerned that plaintiff's inability to access legal materials could deny him a fair opportunity to litigate this claims. The undersigned will direct defendants' counsel to serve the litigation coordinator at plaintiff's institution with a copy of these findings and recommendations. The undersigned will also request that the litigation coordinator assist in ensuring that plaintiff has a fair opportunity to access his legal materials. *See Woods v. Carey*, 684 F.3d 934, 938 (9th Cir. 2012).

## II. Defendants' summary judgment motion on exhaustion

Plaintiff proceeds on medical deliberate-indifference claims against defendants Akanno and Palomino under the Eighth Amendment. (Doc. No. 47, at 15.) He alleges that Akanno and Palomino knew about plaintiff's serious back and leg pain, trivialized plaintiff's symptoms, failed to offer treatment, interfered with plaintiff's efforts to obtain treatment, and falsified medical records to prevent plaintiff from obtaining treatment. (*See id.* at 10.) Defendants now move for summary judgment for plaintiff's failure to exhaust administrative remedies as to his claim that Palomino falsified his medical records. (Doc. Nos. 51; 51-11, at 1.) They do not move for summary judgment on any other claim.

A district court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable trier of fact could find in favor of either party at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The dispute is material if it "might affect the outcome of the suit under the governing law." *See id.* at 248. The showing required to obtain summary judgment depends on the movant's burden of persuasion at trial: a movant who has that burden must present evidence supporting every element of a claim or defense; the movant without the burden can show that the opponent

cannot prove an element of a claim or defense.² The court must view the record "in the light most favorable" to the nonmovant, *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018), and may not assess witnesses' credibility or weigh evidence—tasks reserved for the jury, *see Soto v. Sweetman*, 882 F.3d 865, 877 (9th Cir. 2018).

Familiar standards govern burden-shifting at the summary judgment stage. *See Celotex Corp.*, 477 U.S. at 330-31. The movant bears the initial burden of production and must present evidence showing prima facie entitlement to summary judgment. *See id.* at 331. The burden then shifts to the party opposing summary judgment to produce evidence showing a genuine dispute over a material fact. *Id*. The movant bears the ultimate burden of persuasion. *Id.* at 330; *Friedman*, 833 F.3d at 1188).

The Ninth Circuit's decision in *Albino v. Baca* provides further guidance on summary judgment in the context of the exhaustion requirement set forth in the Prison Litigation Reform Act of 1995 ("PLRA"). 747 F.3d 1162 (9th Cir. 2014) (en banc). In *Albino*, the court of appeals explained that, if feasible, the trial court should decide the exhaustion issue before reaching the merits of a prisoner's claim. *Id.* at 1170. If necessary, the court may resolve disputed facts relevant to exhaustion in the same way that courts resolve facts for matters of "judicial traffic control"—such as subject matter jurisdiction, personal jurisdiction, venue, and abstention. *See id.* at 1170 (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)). If a factual finding on a disputed question concerns both exhaustion and the merits, the court's factual finding on exhaustion does not bind the jury. *Id*. at 1171.

**A. Summary judgment record**

To decide a motion for summary judgment, a district court may consider materials listed in Rule 56(c). Those materials include depositions, documents, electronically-stored information, affidavits or declarations, stipulations, party admissions, interrogatory answers,

---

² *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *compare Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (movant with burden of proof at trial), *with Friedman v. Live Nation Merch., Inc*., 833 F.3d 1180, 1188 (9th Cir. 2016) (without burden of proof at trial).

"or other materials." Fed. R. Civ. P. 56(c). A party may object that an opponent's evidence "cannot be presented in a form that would be admissible" at trial, *see* Fed. R. Civ. P. 56(c)(2), and the court ordinarily rules on evidentiary objections before deciding a summary judgment motion, to determine which materials the court may consider. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010); *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 845 (9th Cir. 2004). Here, defendants present plaintiff's administrative grievances and his discovery responses. (Doc. Nos. 51-3, 51-4.) No party disputes these materials' admissibility.

The only question here is whether plaintiff has exhausted available administrative remedies for his claim that Palomino, a registered nurse at KVSP, falsified his medical records. Plaintiff contends that Palomino falsified his medical records by writing several false notes:

- an April 21, 2018 note stating (1) that plaintiff had refused to be seen by Palomino and (2) failing to state that plaintiff's leg had given out;
- a May 12, 2014 note stating that Palomino examined plaintiff's left hip and that Palomino instructed plaintiff to apply ice or heat;
- a June 16, 2014 note stating (1) that Palomino observed plaintiff's lower back, hip, and leg, (2) that plaintiff had a full range of motion, and (3) that Palomino instructed plaintiff to apply ice or heat; and
- a July 14, 2014 note stating (1) that Palomino examined plaintiff's hip, (2) that plaintiff had a full range of motion, (3) that Palomino instructed plaintiff to apply ice or heat as appropriate, and (4) that Palomino saw plaintiff squatting down.

(Doc. No. 70, at 4-5 (Pl.'s Br.); *see also* Doc. No. 57, at 86-95 (Palomino's notes).)

The parties agree that plaintiff submitted a grievance (KVSP HC 14035455) on July 22, 2014 about "medical administrative removal of items in file," and that plaintiff has exhausted that grievance by presenting it to all three levels of grievance review. (Doc. No. 51-2, at 2; *see also* Doc. No. 51-4, at 89.) Plaintiff wrote in the grievance that Akanno, a doctor, had written false statements in his medical file. Plaintiff requested that: (1) "all the statements be removed from [his medical] file"; and (2) "[Akanno] not be allowed to write any further inaccurate statements . . . ." (*See* Doc. No. 51-4, at 93.) Plaintiff did not mention Palomino in that grievance.

At the first-level review, the reviewer denied plaintiff's first request and stated that the documents in plaintiff's medical file that allegedly contained false statements were "legal documents" and as such could not be removed. (*Id*. at 93.) The reviewer granted plaintiff's

second request and stated that Akanno is not permitted to write inaccurate statements in plaintiff's medical file. (*Id*. at 93-94.) However, the reviewer also noted that there was no evidence of false statements in plaintiff's file. (*Id*.) The second-level review resulted in the same outcome: plaintiff's requests were granted in part and denied in part for the same reasons as stated at the first-level review, and the reviewer noted that there was "no evidence the documentation in [plaintiff's] chart was falsified." (Doc. 51-4, at 96.) After the second-level review, plaintiff sought third-level review by submitting an appeal form with an attachment. (*Id*. at 89-92.) Plaintiff wrote in the attachment that "[t]here [was] an on-going issue with KVSP medical falsifying documents, disrespect and abuse of appeal process refusing to investigate and simply supporting [illegible.]" (*Id*. at 92.)

The third-level review led to a slightly different result. (Doc. No. 51-4, at 87.) As for plaintiff's first request, the reviewer noted that all entries in plaintiff's medical file were permanent and "may not be removed." (*Id*.) As for the second request, the reviewer wrote, "Your request that Dr. Akanno not be allowed to write any further inaccurate statements . . . is beyond the scope of the appeals process; however, you have not provided documentation to show Dr. Akanno's statements were inaccurate as you have alleged." (*Id*. at 88.)

**B. Discussion**

Under the PLRA, an inmate who seeks to challenge a prison condition must exhaust available administrative remedies before suing in court. *See* 42 U.S.C. § 1997e. A district court may excuse an inmate's failure to exhaust if he had no administrative remedy available, but apart from this the PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). The court must also dismiss any unexhausted claim even if the inmate's complaint contains an exhausted claim. *See Jones v. Bock*, 549 U.S. 199, 219 (2007). Failure to exhaust is an affirmative defense; defendant must show the availability of administrative remedies and the absence of exhaustion. *See Albino*, 747 F.3d at 1172.

To make out the affirmative defense, a defendant must first show that an administrative remedy was available. To be available, an administrative remedy must allow an inmate to

obtain "some relief for the action complained of," as the word "available" means "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 737-38 (2001)). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Likewise, an administrative remedy is unavailable when "administrative officials have apparent authority, but decline ever to exercise it." *Id.* Similarly, a remedy is unavailable when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use." *Id.* And it is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Next, a defendant must show the absence of exhaustion. A prison's grievance procedures, not the PLRA, define proper exhaustion, s*ee Jones*, 549 U.S. at 218, and in California, the California Code of Regulations govern inmate-grievance procedures, *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009). The Code provides that an inmate's grievance must list all staff members involved in challenged conduct or provide other information useful in identifying those staff members. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3). However, an inmate can exhaust an administrative remedy through an inmate grievance despite failing to comply with a procedural rule "if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (reversing district court's dismissal of inmate claims for failure to exhaust despite inmate's failure to list all staff members involved). "When prison officials opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits, the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed." *Id.* at 658.

Here, defendants contend that plaintiff has failed to exhaust his claim against Palomino for falsifying medical documents because none of plaintiff's grievances list Palomino as a staff

member involved in the challenged conduct. The court should deny defendants' motion for summary judgment for two reasons. First, defendants have not shown that plaintiff had an administrative remedy available to him for his claim against Palomino. Plaintiff filed a grievance (KVSP HC 14035455) asking that "all false statements" be removed from his medical file, which allegedly precluded adequate medical treatment and led to unnecessary pain for plaintiff. (*See, e.g.*, Doc. No. 31 ¶¶ 118-19.) At each level of grievance review, the reviewer denied plaintiff's request, stating that the statements in the medical file could not be removed. (*See* Doc. No. 51-4, at 93, 96, 87.) The third-level reviewer noted in passing that, despite the permanence of the challenged documents, plaintiff could submit a request to amend them through a process other than the grievance procedure:

> All documents entered into your UHR are permanent and may not be removed. If you believe information or documentation found in your UHR is inaccurate, you may request an amendment to the documentation. The process for requesting such an amendment can be found in the Inmate Medical Services Policies and Procedures, Volume 6, Chapter 45. At the DLR, you have not submitted any supporting documentation to indicate you have attempted to implement or complete this process.

(Doc. No. 51-4, at 87.) Despite the third-level reviewer's statement about a process of amending medical records, defendants rely solely on the inmate-grievance procedure in support of their motions for summary judgment. (*See* Doc. Nos. 51-1, 51-2, 51-3, 51-4, at 2-6.) Thus, the court need not consider whether the process from the Inmate Medical Services Policies and Procedures, Volume 6, Chapter 45 was available to plaintiff. *See California Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 570 (9th Cir. 2018) ("Inadequately briefed and perfunctory arguments are . . . waived").[3] Because the grievance procedure did not allow him

---

[3] The third-level reviewer's statement does not establish that the process was available to plaintiff. The statement suggests that an inmate "may" submit a request for an amendment, but defendants present no evidence that plaintiff knew about "Inmate Medical Services Policies and Procedures, Volume 6" or that he could actually obtain an amendment through the procedure suggested by the third-level reviewer. Additionally, defendants do not explain that the reviewer's statement could be presented in an admissible form at trial. *See Norse*, 629 F.3d at 973 ("While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence.").

8

to obtain "some relief for the action complained of"—the presence of an allegedly false document in plaintiff's medical file—defendants' evidence falls short of establishing that plaintiff had an administrative remedy available to him. *See Ross*, 136 S. Ct. at 1859.

Second, plaintiff's failure to list Palomino as a staff member involved in the challenged conduct does not amount to failure to exhaust because prison officials decided the grievance on the merits, ignoring the procedural defect. *See Reyes*, 810 F.3d at 658. Prison officials reviewed his medical file at each level of review, understanding his request to be for the removal of "all false statements from [his] file." (*See* Doc. No. 51-4, at 87, 93, 95.) The record does not state whether prison officials investigated whether Palomino wrote false statements, but it is at least possible that they reviewed her statements, since Palomino wrote her notes before plaintiff filed his grievance.[4] These facts, viewed—as required—in plaintiff's favor, support a permissible, though far from inescapable, inference that prison staff reviewed not only the notes from Akanno but also those from Palomino.

The grievance reviewers denied plaintiff's request to remove all statements in his medical file not because he had failed to name Palomino in his grievance, but because they found no evidence of false statements and plaintiff could not remove documents from his file. (*Id.*) What is more, plaintiff wrote in an attachment to his appeal form that "[t]here is an on-going issue with KVSP medical falsifying documents" before appealing to the third-level review. (Doc. No. 51-4, at 91-92.) This attachment introduced another procedural defect, as an inmate cannot raise a new issue in an attachment to an appeal form. *See* Cal. Code Regs. tit. 15, § 3084.2(b)(1). Even so, the third-level reviewer denied plaintiff's request on the merits after the review of plaintiff's medical file—overlooking the procedural defects that plaintiff (1) failed to name all staff members and (2) raised a new issue in the midst of the review process. (*See* Doc. No. 51-4, at 87.) Thus, "prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been

---

[4] The dates of Palomino's notes range from March 21, 2014 to July 14, 2014. (*See* Doc. No. 57, at 86-95.) Plaintiff filed his grievance (KVSP HC 14035455) on July 22, 2014. (Doc. No. 57, at 82.) The first-level review was on August 22, 2014. (Doc. No. 51-4, at 93.)

9

developed," and plaintiff's claim against Palomino "has already been fully vetted within the prison system." *See Reyes*, 810 F.3d at 658.

The record presents yet another potential reason for denying summary judgment: a possibility that the interviewer for plaintiff's grievance (KVSP HC 14035455) did not properly screen it.[5] A prison's improper screening of a grievance can make an administrative remedy unavailable, *see McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015) (quoting *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010)), and when plaintiff appealed the first-level review, he wrote,

> I was not 'interviewed' by Dr. Chen at 1st Level (FLR) . . . Chen came into the room [and] told me he's denying 602, I can[']t appeal doctors action and I should write Akanno and ask him to change his statements. Chen then looked at Escorting C/O Anaya and told him 'We're done here' and turned around and walked away. Chen did not conversate with me [and] did not allow me to speak (at all) nor ask if I had supporting documents.

(Doc. 51-4, at 90.) However, whether Chen improperly screened plaintiff's grievance is genuinely disputed: The grievance decisions state that Chen interviewed plaintiff and gave him opportunities to explain his concerns and to provide supporting documents. (*See* Doc. Nos. 51-4, at 93, 95.) The court need not resolve this factual dispute; as discussed above, there are two other independent grounds for the court to deny defendants' motion for summary judgment.

In sum, defendants have not shown that plaintiff had an administrative remedy available or that he failed to exhaust. The undersigned will recommend that the court deny defendants' motion for summary judgment.

---

[5] *See McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015) ("[A] prison's improper screening of a grievance can also render administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." (quoting *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir.2010))). When he appealed the first-level review, plaintiff wrote, "I was not 'interviewed' by Dr. Chen at 1st Level (FLR) . . . Chen came into the room [and] told me he's denying 602, I can[']t appeal doctors action and I should write Akanno and ask him to change his statements. Chen then looked at Escorting C/O Anaya and told him 'We're done here' and turned around and walked away. Chen did not conversate with me [and] did not allow me to speak (at all) nor ask if I had supporting documents." (Doc. 51-4, at 90.)

**III. Other motions**

Plaintiff filed two motions that require resolution through findings and recommendations. The first requests immediate resolution of all claims, and the second requests an *Albino* hearing that—according to plaintiff—would affect the court's decision on defendants' summary judgment motion on exhaustion. These types of motions are not included in the list of dispositive motions enumerated in the Federal Magistrates Act, *see* 28 U.S.C. § 636(b)(1), but courts have recognized "some judicial functions as dispositive notwithstanding the fact that they do not appear in [§ 636(b)(1)]," and the courts in the Ninth Circuit follow a functional approach that considers "the effect of the motion" to determine whether a motion is dispositive. *See Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015); *cf. United States ex rel. Hoggett v. Univ. of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017) (noting that a motion's substance, not its label, governs its disposition). Accordingly, since these two motions could have the effect of dismissing the action or a claim, they are considered dispositive, and the undersigned will issue findings of fact and recommendations rather than orders. The undersigned recommends that the court deny both motions for the reasons discussed below.

**A. Plaintiff's motion for immediate resolution of all claims and other relief**

Plaintiff filed a motion titled, "Plaintiff's request that court order immediate resolution of all claims against defendant Akanno, not consider Akanno in its review of defendants' request to vacate dispositive deadline for its review of Palomino's motions before the court, plaintiff[']s request [for] trial by jury on all unrelated claims." (Doc. No. 69.) Despite the lengthy caption, the motion makes only two requests: (1) that the court deny defendants' motion to vacate the discovery schedule; and (2) that the court immediately resolve plaintiff's claims. (*See id*.) As for the first request, the court has already denied that motion (Doc. No. 68, at 6), so plaintiff's request is moot.

As for the second request, plaintiff states, "Defendants can not dispute the fact that Palomino intentionally falsified plaintiff's records to prevent him from receiving medical treatment, caused him to have a botch[ed] surgery . . . ." (Doc. No. 69, at 1.) However, plaintiff does not develop this argument or present any supporting evidence, so the court

cannot grant summary judgment or make any other ruling in plaintiff's favor. Plaintiff's motion should be denied.

### B. Plaintiff's motion for an *Albino* hearing and other relief

Plaintiff filed a motion titled, "Request for an *Albino* hearing, court considers all evidence, pretrial conference on all claims concerning M.D. Akanno." (Doc. No. 74.) Again, the motion's caption differs from its substantive requests. In the body of the motion, plaintiff requests:

1. a pretrial conference with Akanno;[6]
2. the denial of defendants' request to consider her original reply to plaintiff's opposition to Palomino's motion for summary judgment;
3. the court's consideration of plaintiff's original opposition as well as his amended opposition;
4. an *Albino* hearing to determine the validity of plaintiff's claims that Akanno falsely claimed that he interviewed plaintiff on April 23, 2014, and that Chen informed plaintiff that he could not appeal inaccurate statements and refused to interview him; and
5. leave allowing plaintiff to proceed on Due Process claims under the Fourteenth Amendment against Akanno and Chen if the court finds plaintiff's allegations to be true after the *Albino* hearing.

(*See* Doc. No. 74.) As for the first request, plaintiff does not explain why he needs a pretrial conference with Akanno or why he would be entitled to one, so he has not stated grounds for the requested relief with particularity, as required under Federal Rule of Civil Procedure 7(b)(1)(B). Plaintiff's second, third, and fourth requests are moot: as discussed above, after considering all arguments and records from all parties, the undersigned has concluded that defendants have not shown entitlement to summary judgment on exhaustion. Additionally, because the analysis above turns on issues of law rather than factual disputes, an *Albino* hearing—which would resolve factual disputes—is unnecessary.

As for the fifth request, under Rule 15(a), plaintiff is permitted to add new claims arising from the events that occurred before the filing of the original complaint only by amending the complaint.[7] To amend the complaint, plaintiff must move for leave to amend and file a

---

[6] Plaintiff does not explain what such a conference would establish.

[7] *See Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010); JAMES WM. MOORE, 3 FED.

12

proposed amended complaint. The proposed amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff has not moved for leave to amend or filed a proposed amended complaint, so the court should deny plaintiff's fifth request.

## IV. Other matters

The undersigned will conclude by addressing two other matters. First, the undersigned will extend the deadline for dispositive motions, which is currently September 3, 2018. (*See* Doc. No. 68, at 6.) Although this is an older case, this extension is appropriate to allow time for (1) the parties to object to these findings and recommendations, (2) the court to consider the recommendations, and (3) the parties to prepare dispositive motions.

Second, the undersigned is willing to consider recruiting counsel for plaintiff. At least one reviewer of plaintiff's grievance found that plaintiff needed special accommodation for communication and noted that plaintiff had a Reading Grade Point Level below 4.0 for his Test of Adult Basic Education ("TABE"), even though not all reviewers reached the same conclusion.[8] (*See* Doc. No. 51-4, at 113, 115; *but see* Doc. No. 51-4, at 95, 116, 142.) Plaintiff's TABE score might not compel recruitment of counsel, but the low score coupled with a prison official's finding that plaintiff needed accommodations for communication raise concern whether the court can litigate his claims on his own. Plaintiff has also informed the court that he has a mental illness, has attempted suicide, and has received mental-health crisis

---

PRAC. & PROC. CIV. § 15.30 (Matthew Bender 3d ed.) (comparing Rule 15(d) with former Equity Rule 34 and noting that supplemental pleading is limited to matters that occur after filing of original complaint and that party may add matters that predate original complaint under Rule 15(a)).

[8] "The TABE (Tests of Adult Basic Education) scores reflect an inmate's educational achievement level and are expressed in numbers reflecting grade level." *Nguyen v. Bartos*, No. 10-cv-1461, 2012 WL 3589797, at *2 n.1 (E.D. Cal. Aug. 20, 2012) (citations omitted). The grievance reviewer who noted plaintiff's need for special accommodation also wrote that plaintiff's interaction with Manasrah, a nurse practitioner who interviewed him for the grievance, convinced Manasrah that plaintiff understood the issues involved in the grievance. (Doc. No. 51-4, at 113.) However, plaintiff has alleged in his complaint, under penalty of perjury, that Manasrah misrepresented his condition and was biased during the grievance process. (*See* Doc. No. 31 ¶¶ 86, 89-90, 92, 122.)

treatment. (Doc. No. 64, at 1-2.) The parties' discovery requests and responses suggest that plaintiff might not have a fair opportunity to litigate his claims without obtaining an expert witness, a task difficult for a pro se prisoner. (*See* Doc. Nos. 51-5, 51-6, 51-7, 51-8.)[9] Plaintiff wrote in a previous motion for counsel that he had "an extremely hard time organizing his thoughts and therefore even when he tries his best he is bound to make mistakes as is seen by plaintiff's complaint motion to court etc." (Doc. No. 14, at 1.) If plaintiff wishes to renew his motion for counsel, he should (1) inform the court why he believes that he will prevail in his case in chief, (2) describe his education level, (3) describe his litigation experience, and (4) provide any other information that would help the court assess his ability to represent himself or articulate his claims.

## V. Findings and recommendations

The undersigned recommends that:

1. Plaintiff's motion for a temporary restraining order (Doc. No. 64, at 1-2) be denied;
2. Defendants' motion for summary judgment on exhaustion (Doc. No. 51) be denied;
3. Plaintiff's motion for an immediate resolution of all claims and for other relief (Doc. No. 69) be denied; and
4. Plaintiff's motion for an *Albino* hearing and for other relief (Doc. No. 74) be denied.

The undersigned submits these findings and recommendations to the U.S. district judge presiding over the case under 28 U.S.C. § 636(b)(1)(B) and Local Rule 304. Within 14 days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. The document containing the objections must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The presiding district judge will then review the findings and

---

[9] For example, one of Palomino's requests for production of documents requests "all medical records relating to [plaintiff's] contention that defendant RN Palomino violated [plaintiff's] civil or constitutional rights." (Doc. No. 51-6, at 3.) This may be a legitimate discovery request—and, contrary to plaintiff's contention, nothing suggests that defendants' counsel took advantage of his lack of legal skills—but plaintiff is an expert in neither law nor medicine, and he faces considerable difficulties gathering the pertinent medical records. Plaintiff's claims also depend on his allegations that Akanno and Palomino misdiagnosed and minimized his symptoms, leading to a botched surgery. (*See* Doc. Nos. 33, at 3-5, 9-10; 69, at 1.) Proving those facts may require an expert.

recommendations under 28 U.S.C. § 636(b)(1)(C). The parties' failure to file objections within the specified time may waive their rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

**VI. Order**

1. The new deadline for dispositive motions is Friday, November 2, 2018.
2. Defendants' counsel is directed to send, electronically or by other means, a copy of these findings and recommendations to the litigation coordinator at plaintiff's institution of incarceration. The court requests the assistance of the litigation coordinator in ensuring a fair opportunity for plaintiff to access his legal materials, provided that this arrangement does not disrupt institutional order and security.

IT IS SO ORDERED.

Dated:   August 30, 2018

UNITED STATES MAGISTRATE JUDGE